**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **SHELLEY RAINEY** | * | **CIVIL ACTION NO.:** |
| | * | |
| **VERSUS** | * | **JUDGE:** |
| | * | |
| **UNDERWRITERS AT LLOYD'S, LONDON** | * | **MAGISTRATE JUDGE:** |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**NOW INTO COURT,** through undersigned counsel, comes Complainant, Shelley Rainey (hereinafter "Complainant"), and files her Complaint for Damages and Demand for Jury Trial against Defendant, Underwriters at Lloyd's, London (hereinafter "Lloyd's"), respectfully averring as follows:

**I. PARTIES**

**1.**

Made Plaintiff herein is **SHELLEY RAINEY**, an adult resident of the Parish of St. Charles, Louisiana.

**2.**

Made Defendant herein is **UNDERWRITERS AT LLOYD'S, LONDON**, an insurer domiciled in the United Kingdom who is authorized to do and is doing business in the State of Louisiana and the Parish of St. Charles, which may be served through its Registered Agent for Service of Process, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana 70809.

## II.  JURISDICTION AND VENUE

**3.**

Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C. § 1332 and 1441 because complete diversity of citizenship exists between the parties and because the amount in controversy is greater than the minimum jurisdictional amount.

**4.**

Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District; Complainant resides in this District and the property that is subject to the dispute between Complainant and Lloyd's is located in this District.

## III.  RELEVANT FACTS

**5.**

At all times relevant hereto, Complainant owned the property located at 500 Ormond Boulevard, Destrehan, Louisiana 70047 (the "Property").

**6.**

At all times relevant hereto, Lloyd's provided policies of insurance, numbers VBRT646683R1 (Policies period June 8, 2020-June 8, 2021) and VBRT646683R3 (Policies period June 8, 2021-June 8, 2022) (the "Policies"), to Complainant which covered the Property against perils including hurricanes and fire and provided the following coverages:  $1,236,000.00 for Dwelling; $123,600.00 for Other Structures; $309,000.00 for Personal Property; $123,600.00 for Loss of Use; *inter alia*.

**7.**

On or around August 28, 2021, Hurricane Ida caused significant damages to Complainant's Property.

**8.**

Complainant promptly reported the loss to Lloyd's, who assigned it claim number 2103097 (the "Ida Claim").

**9.**

On or about September 7, 2021, estimator Marc W. Schneider, of Specialty Adjusting International, inspected the Property on behalf of Lloyd's and documented damages to the dwelling and contents, but after over-depreciating the loss and applying the Policies's deductible, Mr. Schneider allowed Complainant only $105,347.66 and $479.21 for her substantial dwelling and contents losses, respectively.

**10.**

Mr. Schenider's inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

**11.**

Complainant was unable to make meaningful repairs to her Property with the meager proceeds allowed by Lloyd's and promptly put Lloyd's on notice of its deficient claims handling.

**12.**

In order to mitigate her damages and prevent further damage to the Property, Complainant tarped the Property's damaged roof.

**13.**

On or about September 15, 2021, Public Adjuster, Randy Thompson of Building Damage Consultants, LLC ("BDC") inspected the Property on behalf of Complainant and created an estimate of damages documenting $310,310.39 in damages to the dwelling, $10,833.13 in damages to other structures and $9,031.69 in damages related to Complainant's contents.

**14.**

On November 30, 2021, a demand for the release of unconditional tenders was sent to Lloyd's, along with the BDC estimate and photographs demonstrating the loss.

**15.**

This submission constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

**16.**

Thereafter, a follow-up bad faith demand for the release of unconditional tenders was sent to Lloyd's, along with the BDC estimate and photographs demonstrating the loss.

**17.**

To date, no more insurance proceeds have been forthcoming.

**18.**

As a result of Lloyd's' failure to timely and adequately compensate Complainant for her covered loss, she was forced to incur the expense of retaining counsel and other expenses to prosecute her claim.

**19.**

Prior to Hurricane Ida, on or around February 11, 2020, a fire caused significant damages to Complainant's Property, which were distinct from the damages caused by Hurricane Ida.

**20.**

Again, Complainant promptly reported the loss to Lloyd's, who assigned it claim number 20200289 (the "Fire Claim").

**21.**

On or about February 16, 2020, adjuster, Larry Clayton, of Brown Claims Management Group, LLC, inspected the Property on behalf of Lloyd's and documented in damages to the dwelling and contents, but after over-depreciating the loss and applying the Policies's deductible, Mr. Clayton allowed Complainant only $25,487.44 and $948.52 for her substantial covered dwelling and contents losses, respectively.

**22.**

Mr. Clayton's inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

**23.**

Notably, Lloyd's did not tender payment on its own estimate until January 28, 2021, *more than 11 months after it had proof of loss by way of its own inspection*.

**24.**

Complainant was unable to make meaningful repairs to her Property with the meager proceeds allowed by Lloyd's and promptly put Lloyd's on notice of its deficient claims handling.

**25.**

On or about July 12, 2021, Public Adjuster, Randy Thompson of Building Damage Consultants, LLC ("BDC") inspected the Property on behalf of Complainant and created an estimate of damages documenting $599,610.61 in damages to the dwelling, and $16,573.45 in damages related to Complainant's contents.

**26.**

On February 3, 2022, a demand for the release of unconditional tenders was sent to Lloyd's, along with the BDC estimate and photographs demonstrating the loss.

**27.**

This submission constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

**28.**

To date, no more insurance proceeds have been forthcoming.

**29.**

As a result of Lloyd's' failure to timely and adequately compensate Complainant for her covered loss, she was again forced to incur the expense of retaining counsel and other expenses to prosecute her claim.

**30.**

As a result of Lloyd's' failure to timely and adequately compensate Complainant for her substantial losses, the Property remains in a state of disrepair.

**31.**

Upon information and belief, Lloyd's' failure to timely and adequately compensate Complainant for her loss, after receiving satisfactory proofs of loss, was purposeful or at least negligent.

**32.**

Upon information and belief, Lloyd's purposely and/or negligently misrepresented to Complainant the terms and conditions of the Policies.

**33.**

Upon information and belief, Lloyd's conducted the investigation and claims handling for Complainant's claims in bad faith, as that term is term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

**34.**

Upon information and belief, Lloyd's manipulated its pricing software to artificially suppress the cost of repairs below market value.

**35.**

Upon information and belief, Lloyd's purposely or at least negligently failed to include adequate overhead and profit in its estimates of damages.

**36.**

Complainant has incurred or will incur additional expenses in repairing the Property as a result of Lloyd's' failure to timely compensate her for her substantial and covered losses.

**37.**

Complainant has incurred or will incur additional living expenses as a result of the damages caused to her Property by Hurricanes Ida and the fire, including those additional living expenses that will be incurred during the repair of the Property.

### III. CAUSES OF ACTION

#### A. Breach of the Insurance Contract

**38.**

Complainant realleges and re-avers the allegations contained in paragraphs 1-37, above, as if restated herein.

**39.**

An insurance contract, the Policies, exists between Complainants and Lloyd's.

**40.**

The Policies provide coverages for perils including hurricanes and fire.

**41.**

Despite having received satisfactory proofs of loss for damages caused by Hurricane Ida and the fire, Lloyd's failed to timely tender adequate insurance proceeds as required by the Policies.

**42.**

By failing to timely tender adequate insurance proceeds after having received satisfactory proof of a covered loss by way of Mr. Schneider's inspection, Lloyd's breached the Policies.

**43.**

By failing to timely tender undisputed insurance proceeds after having received satisfactory proof of a covered loss by way of Mr. Clayton's inspection, Lloyd's breached the Policies.

**44.**

By failing to timely tender undisputed insurance proceeds after having received satisfactory proofs of covered losses by way of the BDC estimates, Lloyd's breached the Policies.

**45.**

By purposely and/or negligently misrepresenting to Complainant the terms and conditions of the Policies, Lloyd's breached the Policies.

**46.**

By failing to conduct the claims handling for Complainant's Ida Claim and/or Fire Claim in good faith and with fair dealing, Lloyd's breached the Policies.

**47.**

By manipulating its pricing software to artificially suppress the cost of repairs below market value, Lloyd's breached the Policies.

**48.**

By failing to include adequate overhead and profit in its estimates of damages, Lloyd's breached the Policies.

**49.**

Complainant has suffered and continues to suffer damages as a result of these breaches of the Policies.

## B. Bad Faith

**50.**

Complainant realleges and re-avers the allegations contained in Paragraphs 1-49, above, as if restated herein.

**51.**

The actions and/or inactions of Lloyd's in failing to timely and adequately compensate Complainant for the covered losses under the Policies were arbitrary, capricious, and without probable cause—as those terms are used in conjunction with La. R.S. §§ 22:1892 and 22:1973, making Lloyd's liable for statutory bad faith penalties.

**52.**

Under La. R.S. § 22:1973, an insurer owes a good faith duty and fair dealing to an insured and has an affirmative duty to adjust claims fairly and promptly; failing to pay a claim in a manner arbitrary, capricious or without probable cause is in violation of La. R.S. § 22:1973.

**53.**

"[F]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is considered "bad faith" and is in violation of La. R.S. § 22:1973.

**54.**

La. R.S. § 22:1892 imposes bad faith penalties on insurers who fail to adequately pay claims following satisfactory proof of loss within thirty (30) days.

**55.**

Lloyd's is in violation of La. R.S. §§ 22:1973 and 22:1892 for failing to provide Complainant adequate payment in connection with her Ida Claim and/or Fire Claim, despite having received satisfactory proof of loss following its own inspections of the Property and following its receipt of independent proofs of loss from BDC.

**56.**

Lloyd's' misrepresentation of the relevant facts and/or the terms of the Policies was in bad faith.

**57.**

Lloyd's' failure to pay timely for damages it knew, or should have known, existed at the time of the initial adjustment of the relevant claims was in bad faith.

**58.**

Lloyd's' failure to pay timely for damages it knew, or should have known, existed at the time it received the BDC estimates was in bad faith.

**59.**

Lloyd's' manipulation of its pricing software to artificially suppress the cost of repairs below market value was in bad faith.

**60.**

Lloyd's' failure to include adequate overhead and profit in its estimates of damages was in bad faith.

**61.**

Lloyd's' handling of Complainant's Ida Claim and Fire Claim was in bad faith.

## IV.  DAMAGES

**62.**

Complainant realleges and re-avers the allegations contained in Paragraphs 1-61, above, as if restated herein.

**63.**

As a result of Lloyd's' breaches of contract, bad faith claims adjusting, and other bad acts, Complainant has incurred the following, non-exclusive damages:

a. Diminution of the value of the Property;

b. Actual repair costs;

c. Reimbursement for personal repairs at the Property;

d. Actual costs related to personal property manipulation, cleaning, repair, and/or replacement;

e. Additional living expenses;

f. Mental anguish;

g. Penalties delineated in La. R.S. §§ 22:1892 and 22:1973; and

h. Attorney's fees, other professional fees, and litigation costs associated with the bringing of this action.

**64.**

Complainant requests a trial by jury.

**65.**

**WHEREFORE,** Complainant, Shelley Rainey, prays that, Defendant, Underwriters at Lloyd's, London, be served with a copy of this Complaint and be duly cited to appear and answer

the allegations contained therein, and that after expiration of all legal delays and proper legal proceedings, there be a judgment entered in favor of Complainant, Shelley Rainey, and against Defendant, Underwriters at Lloyd's, London, in an amount that will fully and fairly compensate Complainants pursuant to the evidence and in accordance with the law, all sums with legal interest thereon, from the date of judicial demand until fully paid, for all costs of these proceedings, and for all general and equitable relief.

**RESPECTFULLY SUBMITTED:**

_____
Lauren E. Checki, La. Bar No. 31659
Galen M. Hair, La. Bar. No. 32865
**HAIR SHUNNARAH TRIAL ATTORNEYS, LLC.**
**d/b/a INSURANCE CLAIM HQ**
**d/b/a INSURANCE CLAIM LAWYERS, INC.**
3540 S I-10 Service Rd W, Ste, 300
Metairie, Louisiana 70001
Telephone: 504.684.5200
Facsimile: 504.613.6351
checki@hairshunnarah.com
hair@hairshunnarah.com

**PLEASE SERVE:**
**Underwriters at Lloyd's, London**
*Through its Registered Agent of Service of Process:*
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809.